IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-CR-38 |
| ) | (VARLAN/SHIRLEY) |
| ERNEST RAYMON STENNIS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court on the Defendant's Motion to Suppress Evidence [Doc. 13], filed on August 22, 2008. The parties came before the Court for a suppression hearing on September 15, 2008. Assistant United States Attorney Hugh B. Ward, Jr., represented the government. Attorney Kim Tollison appeared on behalf of the Defendant, who was also present. At the conclusion of the hearing, the Court took the motion and related filings under advisement.

The Defendant is charged [Doc. 3] in Count One with possession of five grams or more of "crack" cocaine with intent to distribute and in Count Two with possession of a .38 caliber revolver and ammunition in furtherance of a drug trafficking crime. The Defendant contends [Doc. 13] that the police searched his person without probable cause, a search warrant, or consent in violation of his Fourth Amendment rights. He asks that all evidence seized in the search be suppressed.

The government responds [Doc. 16] that a law enforcement officer may stop a vehicle

1

if he or she has reasonable suspicion that the vehicle's occupants are involved in past or present illegal activity. Once the officer stops a vehicle for a traffic violation, the officer may properly order the occupants out of the car for the duration of the stop. The government contends that the officers may also perform a "Terry search" of a suspect and the vehicle for weapons as long as the officer has an articulable and reasonable belief that the suspect may be armed and dangerous. Finally, it maintains that assuming the officer has probable cause to arrest the suspect, the officer may conduct a full search of the suspect for weapons and evidence incident to the suspect's arrest.

## I. SUMMARY OF TESTIMONY

Officer David Roncska, of the Knoxville Police Department (KPD), testified that on April 8, 2008, he was on patrol in the East Sector of Knoxville, when he encountered the Defendant Ernest Stennis. He had first encountered the Defendant a month earlier while investigating a domestic dispute near the Defendant's residence on Riverside Drive. A male had contacted the KPD, complaining that his live-in girlfriend had disposed of some of his property. Roncska went to the residence and questioned the girlfriend about the missing property. The girlfriend told him that she was addicted to crack cocaine and had traded the items in question to a man named Ernest, who was in a wheelchair and who lived down the road, in exchange for crack. The girlfriend said that Ernest kept firearms and narcotics in his groin area.

Officer Roncska stated that he went to the residence identified by the girlfriend and found the Defendant, who is wheelchair bound, there along with his wife and some other people. The Defendant and his wife consented to Roncska entering and looking around their home. The Defendant told him that he had purchased a television and some other electronic equipment from

2

the girlfriend. Roncska described the individuals present as "evasive" with regard to his questions about narcotics and said he did not pursue the matter any further.

Roncska testified that on April 8, 2008, he stopped the Defendant, who was driving a Cadillac with an inoperable tag light, at the intersection of Linden and Harrison Streets. Roncska explained what transpired in the stop, while viewing a DVD (Exhibit No. 1) of footage from that evening recorded on his in-car camera. He stated that he called in the traffic stop and began a records check but did not learn of the Defendant's two prior felony convictions at the time because they were not from Knox County. At the beginning of the stop, Roncska recognized the Defendant from the previous encounter involving the missing property. He assisted the Defendant out of his car and into his wheelchair. As the Defendant sat down in his wheelchair, Roncska could see two rigid objects, which he believed to be weapons, creating bulges in the Defendant's waistline and just under his groin area. He decided to perform a <u>Terry</u> pat down and asked the Defendant for permission to search him at the same time that he pulled up the Defendant's shirt. Roncska found two handguns and narcotics in the Defendant's pants.

Officer Roncska stated that a subsequent search of the Defendant's car revealed a black bag on the front passenger's seat that contained a digital scale, a plastic bag holding twenty-six hydrocodone pills, two percocet pills, an unlabeled pill bottle with eight percocet pills, another plastic bag containing an unidentified blue pill and an unidentified white pill, and four .38 caliber rounds. The Defendant was arrested and advised of his <u>Miranda</u> rights. The Defendant agreed to give a statement and explained that the guns were for his protection.

Officer Roncska testified that in his police report, he stated that the Defendant consented to the search of his person. He said that the DVD demonstrates that he gave the

3

Defendant numerous opportunities to reject consent to get out of his car, but the Defendant exited his car willingly. He then asked the Defendant if he had anything illegal on him and if the Defendant would mind if he looked. Roncska stated that the DVD shows that the Defendant put his hands up as if to say he did not care if Roncska searched him. The Defendant never objected to the search. At that point, Roncska saw something that he believed was a weapon and decided to perform a Terry pat down. Later that evening, Roncska took the Defendant to the hospital for his medical condition. While at the hospital, the Defendant said that he remembered the previous encounter with Roncska.

On cross-examination, Officer Roncska testified that the incident that occurred a month before he stopped the defendant arose out of a domestic dispute at Marble Hill Lane. He confirmed that a man from that residence reported that his live-in girlfriend had taken some of his property. The girlfriend admitted that she had traded the property for drugs. The man ultimately decided not to pursue charges against his girlfriend at that time.

Officer Roncska agreed that he stopped the Defendant around 11:20 p.m. for not having a tag light. After questioning the Defendant and asking for his driver's license, Roncska asked to search his car. The Defendant agreed to a search of the car. The Defendant got out of the car and sat in his wheelchair. At that time, Roncska saw a large, rigid object in the Defendant's groin area and knew from the incident with the crack-addicted girlfriend that the Defendant carried guns in his pants. Roncska asked the Defendant, "Do you mind if I look?" while he simultaneously pulled up the Defendant's shirt. Roncska stated that because the Defendant did not object as he pulled up the Defendant's shirt and asked to search, he took that as the Defendant giving consent. Roncska admitted that the Defendant never gave him a verbal response to his question about

4

looking. He began by patting down the Defendant, but it turned into a search when he identified a rigid object that was not part of the Defendant's anatomy. As he reached down to touch the Defendant's shirt, he felt a weapon. Even though the Defendant was in a wheelchair, Roncska feared for his safety because the Defendant still had use of his hands. Officer Roncska acknowledged that he later told the Defendant, "[C]rack heads tell us everything when they want to get out of jail."

## II. FINDINGS OF FACT

Based upon the testimony of Officer Roncska and the Court's own review of the DVD, the Court finds the following facts regarding the stop of the Defendant: Officer Roncska pulled the defendant over at 11:20 p.m. on April 8, 2008. Roncska went to the driver's side window of the Defendant's car and explained to the Defendant that he stopped him for having an inoperable tag light. He asked for the Defendant's driver's license, which the Defendant provided. He asked to see the Defendant's registration, but the Defendant could not find it. Roncska asked the Defendant if he had anything illegal in the car, and the Defendant denied that he did. Roncska asked the Defendant to wait in his car while Roncska returned to his cruiser. Seven and one-half minutes later, Roncska returned to the Defendant's car, asked again whether there was anything illegal in the car, and asked the Defendant if he could take "a peek," meaning could he search the car. The Defendant responded that he did not care if Roncska searched his car. Roncska returned to his cruiser again for nearly four minutes.

Roncska approached the Defendant's driver's side window a third time and asked if the Defendant needed his wheelchair to get out of the car. Although the Defendant told Roncska

5

that he could get out of the car without assistance, Roncska asked if it would be easier for his partner to retrieve the wheelchair for the Defendant. The Defendant agreed to let the other officer get his wheelchair. The second officer got the Defendant's wheelchair from the backseat through the rear, passenger's side door. A third officer arrived. Roncska opened the Defendant's driver's side door and pushed the wheelchair to the side of the car by the door. The Defendant placed his arms on the car door and the roof of the car and lifted himself into the wheelchair, while Roncska held the wheelchair in place. Roncska stood over the Defendant looking down at him while the Defendant arranged himself in his wheelchair. Roncska testified that at this point, he noticed bulges at the Defendant's waistline and in the groin area of the Defendant's pants.

      Once the Defendant was in his wheelchair, the Defendant rolled the wheelchair a few feet back away from the car. Roncska told the Defendant that the other officer would push him further away from the car. The other officer took the handle of the wheelchair, and Roncska asked the Defendant if he had anything in his jacket[1] while simultaneously grabbing and lifting the jacket and feeling the outside of the pocket. Roncska then asked the Defendant if he had anything in his pants and began patting down the Defendant's pants. The Defendant responded, "No Sir." Roncska said, "What's that right there, Sir?" and then ordered the Defendant to put his hands on his head. Roncska asked the Defendant, "Mind if I take a look here?" while lifting the Defendant's jacket. The Defendant replied, "No, Sir." Roncska then pulled a gun from the Defendant's pants. Roncska told the other officer to handcuff the Defendant. Roncska continued to search inside the Defendant's pants while asking him if he had anything else concealed in them. Roncska found a second gun and

---

[1] The Court notes that in the DVD, the Defendant appears to be wearing a sleeveless outer garment, which the Court will refer to as a jacket, over a long-sleeved shirt.

6

drugs on the Defendant. The other officers subsequently searched the Defendant's car.

### III. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. The Defendant contends that his rights under the Fourth Amendment were violated because the officer searched his person without his consent or probable cause. The Defendant does not contest the validity of the traffic stop or his consent to search his car. Instead, he argues that he did not give consent to search his person before the officer began searching him and that his consent to search his car was not also consent to search his person.

Although the Defendant does not contest his being required to get out of his car, the Court notes that an officer may properly ask the driver of a vehicle to get out of the car during a traffic stop, such intrusion being "*de minimis*" in relation to the stop itself. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977); United States v. Burton, 334 F.3d 514, 519 (6th Cir. 2003). With regard to the frisk of the Defendant's person, an officer may frisk a suspect for weapons in order to assure the officer's safety if a reasonable officer under those circumstances would be justified in believing his or her safety was at risk. See Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Strahan, 984 F.2d 155, 158 (6th Cir. 1993). This standard also applies when the individual is stopped for a traffic violation, permitting the officer to frisk for weapons if a reasonable person would conclude that the detainee "might be armed and presently dangerous" based upon the circumstances known at the time. Mimms, 434 U.S. at 111-112; see also Michigan v. Long, 463 U.S. 1032, 1048 (1983); United States v. Myers, 102 F.3d 227, 232 (6th Cir. 1996) (holding that it is well-settled that officer may frisk the subject of a traffic stop). "The focus of judicial inquiry is whether the officer reasonably

7

perceived the subject of a frisk as potentially dangerous, not whether he 'had an indication' that the defendant was in fact armed." United States v. Bell, 762 F.2d 495, 500 n.7 (6th Cir. 1985). However,

> the Fourth Amendment does not tolerate, nor has the Supreme Court . . . ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained was armed and dangerous. The Supreme Court has, in interpreting the Fourth Amendment, struck a balance between the justifiable concern for officer safety when confronting an individual and the substantial individual interest in being free from unreasonable intrusion.

Bennett v. City of Eastpointe, 410 F.3d 810, 841 (6th Cir. 2005).

In the present case, the Court examines the totality of the circumstances to determine whether Officer Roncska had a reasonable belief that the Defendant could be armed and/or potentially dangerous, thus justifying a Terry pat-down. Officer Roncska testified that as the Defendant exited his car and sat in his wheelchair, Roncska noticed bulges in the Defendant's waistline and groin area that he believed were consistent with weapons. Roncska was standing behind and over the Defendant as the Defendant positioned himself in his wheelchair and, thus, was in a position from which he could view the bulges to which he testified. In addition to the bulges Roncska observed, the Court notes that Roncska had information that the Defendant carried guns in his groin area from an investigation occurring approximately one-month before the instant stop. While investigating a missing property call, Roncska learned from the girlfriend who had purportedly disposed of the property that was the subject of the investigation that she had traded the property to a man named Ernest, who was in a wheelchair and who lived nearby on Riverside Drive. The girlfriend also told Roncska that Ernest carried narcotics and guns in his pants.

The Defendant objects to the reliability of this information from an admitted "crack-

head," noting Officer Roncska's statement to the Defendant that crackheads will tell the police anything to get out of jail. Although an anonymous tip that a person is carrying a gun cannot alone support a stop and frisk for weapons, <u>Florida v. J.L.</u>, 529 U.S. 266, 271 (2000), the present tipster was not anonymous. While Officer Roncska could not recall her name at the suppression hearing, he stated that the details of his investigation were contained in police records. Also, Roncska corroborated several pieces of the girlfriend's information. Roncska went to the location she indicated on Riverside Drive and found an individual named Ernest who was wheelchair bound. This man, whom Roncska recognized to be the Defendant during the stop, confirmed that he had received a television and other electronic items from the woman in question, although he denied that he had traded her drugs for these items. Finally, the Court would note in addition to the corroboration of the innocent facts from the girlfriend's report, that she made an admission against her own interest when she stated that she traded the missing property to Ernest for crack. Considering the corroboration of the girlfriend's statements, the Court finds that Officer Roncska could reasonably rely upon her information as a basis for his belief that the Defendant was armed at the time of the stop.

Accordingly, the Court finds that the bulges in the Defendant's clothing observed by Officer Roncska along with the information from his earlier investigation that the Defendant carried firearms in his pants provided Roncska with a reasonable basis to believe that the Defendant was or might be armed and/or dangerous and provided Roncska with justification to believe his safety might be at risk. Thus, Roncska could properly perform a <u>Terry</u> pat-down of the Defendant after he got out of the car. At the suppression hearing, the Defendant argued that Officer Roncska went beyond a <u>Terry</u> frisk and, instead, performed a search under his clothing after he got out of his car.

9

The Court's review of the DVD discloses that after the Defendant got out of his car and into his wheelchair, he rolled himself away from the car a few feet. At that point, Officer Roncska instructed the Defendant that another officer would push him farther away from the car. Roncska touched and lifted the Defendant's jacket and felt the outside of the pocket. Roncska then patted down the Defendant's pants. Although Roncska lifted the bottom of the jacket to manipulate it, the Court finds this was due to the logistics of Roncska standing and the Defendant sitting, rather than an attempt by Roncska to look underneath the jacket. Moreover, the Court notes that Roncska testified that once he touched the Defendant's jacket, he felt what he believed to be a weapon. Once Roncska felt the weapons under the Defendant's clothing, he could properly reach inside of the Defendant's clothing to retrieve them. Accordingly, the Court recommends that the Defendant's Motion to Suppress Evidence [Doc. 13] be denied.

Because the Court has held that Officer Roncska had a reasonable basis to perform a Terry frisk of the Defendant, it does not need to reach the question of whether and when the Defendant consented to a search of his person. Nevertheless, the Court would note that Officer Roncska's stated belief that the Defendant had consented to a search of his person because the Defendant did not object to the search as he proceeded to search him is contrary to Sixth Circuit law. Consent to search must be "unequivocal and intelligently given, untainted by duress or coercion." United States v. Cooke, 915 F.2d 250, 252 (6th Cir. 1990) (citing United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977); see also United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998). Furthermore, consent must be more than mere acquiescence to apparent lawful authority. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968); United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999). Additionally, consent "must be proved by clear and positive testimony[.]" United States

10

<u>v. Williams</u>, 754 F.2d 672, 675 (6th Cir. 1985).

Finally, during its closing argument, the government orally moved for the indictment to be amended to reflect the date of April 8, 2008, rather than April 1, 2008. The Defendant had no objection to amending the indictment to reflect the April 8, 2008 date. Defense counsel noted that the Defendant would not be prejudiced by the change because the April 8, 2008 date was on the state warrants and the DVD. The Court notes that the DVD reflects that the date of the stop and search was April 8, 2008. Because the parties agree to the proposed amendment, the Court recommends that the date in both counts of the indictment be changed to April 8, 2008.

## IV. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [**Doc. 13**] be **DENIED** and that the government's oral motion to amend the date in the indictment be **GRANTED**.[2]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see <u>United States v. Branch</u>, 537 F.3d 582, 587 (6th. Cir. 2008); see also <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide <u>de</u> <u>novo</u> review where objections to this report and recommendation are frivolous, conclusive, or general. <u>Mira v. Marshall</u>, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).