UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:08-CR-38 |
| | ) | (VARLAN/SHIRLEY) |
| ERNEST RAMON STENNIS, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the Court for consideration of the Reports and Recommendations ("R&R") entered by United States Magistrate C. Clifford Shirley on October 15, 2008 ("original R&R") [Doc. 23] and January 7, 2009 ("Amended R&R") [Doc. 38] addressing defendant's Motion to Suppress Evidence [Doc. 13]. The defendant filed an objection to each R&R [Docs. 30; 39; *see also* Docs. 31; 42], the government filed responses to defendant's objections [Docs. 31; 42], and the Court heard oral arguments on the objections [*see* Doc. 43]. The Court has independently reviewed the parties' filings, the R&Rs and other Court orders, the transcript of the first suppression hearing [Doc. 21], the DVD of the traffic stop admitted as Exhibit One to that hearing, and the late-filed DVD [*see* Doc. 22] and has considered defendant's objections *de novo*. For the reasons stated herein, the Court will overrule defendant's objections [Docs. 31; 42] and defendant's Motion to Suppress Evidence [Doc. 13] will be denied.

## I.  Background

Defendant is charged with one count of possession with intent to distribute 5 grams or more of cocaine base, one count of possessing firearms in furtherance of a drug trafficking crime, and one count of being a felon in possession of firearms.  The evidence that forms the basis of these charges was discovered on April 8, 2007, during a traffic stop.  During the traffic stop, Officer David Roncska asked defendant for permission to search his vehicle and defendant gave his consent.  Officer Roncska asked defendant to get out of his car and defendant complied.  Defendant uses a wheelchair and Office Roncska assisted defendant in getting from his vehicle to the wheelchair.  Officer Roncska then searched his person and found guns and narcotics in defendant's pants.  Defendant states that this search was without probable cause, a search warrant, or consent.

Magistrate Judge Shirley held an evidentiary hearing on September 15, 2008 ("initial suppression hearing") on defendant's Motion to Suppress Evidence.  [*See* Doc. 19.]  At that hearing, Officer Roncska testified about the traffic stop and a DVD of the traffic stop was admitted into evidence. [*See* Doc. 20.] Officer Roncska testified that as the defendant exited his car and sat in his wheelchair, Roncska noticed bulges in the defendant's waistline and groin area that he believed were consistent with weapons.  Officer Roncska testified that he also believed that defendant may have had weapons because the officer was familiar with defendant based upon information provided by a woman and contact with the defendant during a prior investigation.  Specifically, Officer Roncska testified about one month prior to the traffic stop, he responded to a call in which a man named Aaron alleged that his

girlfriend, Joyce, sold or otherwise got rid of a large amount of his property. Officer Roncska testified that he questioned Joyce and she admitted that she traded the property to a man named Ernest for crack, that this man was in a wheelchair, lived nearby on Riverside Drive, and carried guns in the groin area of his pants. During that prior investigation, Officer Roncska went to the location on Riverside Drive described by the woman and found an individual named Ernest who was wheelchair bound. Officer Roncska stated that, when he stopped defendant, he recognized him as the same man from this prior investigation.

During Officer Roncska's testimony, he was asked if he had any documents relating to the prior encounter with defendant. Officer Roncska indicated that his audio and video was recording at the time of the incident and that he was attempting to get those records so that they could be provided to the Court. Assistant United States Attorney Hugh Ward asked if he could file the DVD once he received it, and Magistrate Judge Shirley stated that he could.

On October 15, 2008, Magistrate Judge C. Clifford Shirley filed his original R&R [Doc. 23], in which he recommended that defendant's motion to suppress be denied. Judge Shirley found that Officer Roncska's testimony was credible and that his observation of bulges in defendant's clothing along with the information he knew from his prior investigation provided Officer Roncska with a reasonable basis to believe that defendant was or might be armed and dangerous. Judge Shirley found that this justified a *Terry* pat-down search and Officer Roncska stayed within the scope of a *Terry* search until he felt was he

believed to be a weapon and then he was entitled to reach under defendant's clothing to retrieve it.

On the same day as Magistrate Judge Shirley entered the original R&R, the government filed the DVD containing the audio recording of Officer Roncska's prior encounter with defendant ("late-filed DVD"). [*See* Doc. 22]. The late-filed DVD contains the recording from Officer Roncska's in-car camera and microphone attached to his belt during the investigation of an incident which occurred on December 27, 2006. During this incident, Officer Roncska and Officer Jeremy Jinnettt were called to the home because a man identified as Aaron complained that his girlfriend, Joyce, sold some of his property to an individual in exchange for crack. Joyce eventually admitted that she used crack cocaine and that the last time she used crack was the day before. She stated that she traded the property in question to an individual named Pete for crack. She stated that Pete lived "up the road," in the second trailer on the right on Riverside Drive with a Christmas tree out front. When asked what Pete looked like, she described him as "crippled," stated that he carried a pistol and that he was "forty-something." She further explained that he lived with his wife who was "light-skinned" and about five feet, six inches tall. Joyce asked the officers multiple times not to tell Pete that she told the officers about him, stating that if they did, Pete would kill her.

The officers went to the home described by Joyce, and defendant's wife confirmed that her husband used a wheelchair and she stated that his name was Ernest. She allowed the officers to enter their home and the officers spoke to defendant. When the officers told

4

defendant that they received a report that there was stolen property in his home, defendant admitted that he purchased a plasma screen television and a computer from a woman named Joyce.

In light of the filing of this DVD, the defendant filed a Motion to Reconsider [Doc. 28], requesting that the Magistrate Judge reconsider the R&R in light of the new evidence, and an objection to the original R&R, to which government filed a response. Magistrate Judge Shirley granted defendant's Motion to Reconsider [Doc. 33] and held a second evidentiary hearing on the Motion to Suppress Evidence on December 8, 2008 ("reopened suppression hearing") [*see* Doc. 34]. Officer Roncska and Officer Jinnettt testified at this hearing regarding the late-filed DVD. [*See* Doc. 35.]

In addition to testifying about the evidence on the late-filed DVD, Officer Roncska testified that he responded to Joyce and Aaron's home on two occasions after the December 27, 2006 visit. The first occasion was when he responded to a call about a car fire and arrived to find Aaron's Land Rover in flames. Joyce and Aaron alleged that defendant and other individuals set Aaron's car on fire in retaliation for them speaking to the police about defendant. They identified the person who set the fire as Ernest and Joyce said that the person was in a wheelchair. Officer Roncska's next encounter with Joyce and Aaron occurred when Officer Roncska followed up on a 911 call regarding alleged threats defendant made to Joyce and Aaron.

Officer Jinnett also testified about the evidence on the late-filed DVD and the incident in which Aaron's car was on fire. Officer Jinnett testified that Joyce and Aaron said that the

5

fire was in retaliation for them speaking to the police about the trade of electronic equipment for crack and that the person responsible for the fire was named Pete.

Following the hearing, Magistrate Judge Shirley filed the Amended R&R [Doc. 38], in which he again recommended that the motion to suppress be denied. Despite some minor factual inconsistencies between Officer Roncska's testimony at the original hearing and his testimony at the reopened hearing, including his recollection of name the name Joyce used to identify the defendant and the date of his initial encounter with defendant, Judge Shirley found Roncska's testimony credible. Ultimately, Judge Shirley found that the bulges in the defendant's clothing observed by Officer Roncska along with the information from his earlier investigation that the Defendant carried a pistol and had threatened to kill those whom he believed had exposed his drug business provided Officer Roncska with a reasonable basis to believe that the defendant was or might be armed and dangerous and provided Officer Roncska with justification to believe his safety might be at risk. Additionally, Judge Shirley found that Officer Roncska did not go beyond the scope of a *Terry* frisk prior to feeling what he believed to be a weapon.

Defendant filed an objection to the Amended R&R [Doc. 39] and the government filed a response to it [Doc. 42]. The Amended R&R supercedes the original R&R and, thus, the Court will consider the Amended R&R in its analysis below.

**II.   Analysis**

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendant objects. In doing so, the Court has carefully

6

considered Judge Shirley's R&Rs [Docs. 23; 38], the underlying briefs [Docs. 13; 14; 16], briefs regarding the pending objections [Docs. 30; 31; 39; 42], the DVD of the traffic stop, and the late-filed DVD of the December 27, 2006 investigation.

Defendant essentially makes two objections: (1) that the magistrate judge's reopening of the suppression hearing was an abuse of discretion and the Court should only base its findings on the evidence and argument presented at the first suppression hearing and the late-filed DVD, and (2) that the *Terry* frisk was not justified and even if it was, Officer Roncska went beyond the scope of a *Terry* frisk.

### A. Reopening of Suppression Hearing

The decision of whether to reopen a suppression hearing is within the discretion of the court. *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002). When faced with a motion to reopen, the district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted. *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005) (quoting *United States v. Kithcark*, 218 F.3d 213, 219-20 (3d Cir. 2000)).

Defendant objects to the reopening of the hearing on the ground that "[t]here is absolutely no reason to reopen the proof." [Doc. 39.] Defendant argues that neither party asked to reopen the suppression hearing and the Court abused its discretion by doing so on its own. He bases this argument in part on Magistrate Judge Shirley's statement to defendant's counsel during the original suppression hearing that, "If you have any objections

7

to it or questions, legitimate questions, about it, you can seek to have the officer recalled and ask him short questions about that only, not reopening the suppression hearing." [Tr. at 40.]

Defendant does not offer any arguments that he was prejudiced by the reopening of the hearing. This is not the normal case in which reopening is requested after the magistrate judge concluded that the government had not presented sufficient evidence to support probable cause or reasonable suspicion and the government sought to reopen the suppression hearing to present additional proof. Instead, Magistrate Judge Shirley initially ruled in favor of the government and the government simply submitted evidence it was instructed to submit at the original hearing. The defendant then asked for the Court to reconsider his motion to suppress in light of the new evidence contained in the late-filed exhibit but objected to the reopening of the hearing. The government argued that the Court should consider the officers' testimony related to the late-filed exhibit, as the testimony showed the entire context of Officer Roncska's prior encounter with defendant. [*See* Doc. 37.]

The Court does not agree with defendant's argument that there was no reason to reopen the proof as the new proof allowed the Court to better understand the evidence presented on the late-field DVD, nor does the Court find that defendant was prejudiced by reopening the hearing. The reopening of the hearing not only allowed the witnesses to explain the sequence of events on the late-filed DVD, it also allowed defendant the opportunity to cross-examine the officers regarding the events on the DVD. The only potential prejudice the Court can conceive is delay; however, it was defendant who initially requested that the Court reconsider the motion to suppress in light of the late-filed DVD.

8

Any additional delay caused by the hearing was minimal and it was offset by the value of the hearing. Accordingly, the Court does not find that Magistrate Judge Shirley abused his discretion in reopening the suppression hearing, and therefore finds that it is proper to consider evidence presented at the initial suppression hearing held on September 15, 2008, in the late-filed DVD, and at the reopened suppression hearing held on December 8, 2008 in ruling on defendant's objections to the R&R.

### B. *Terry* Frisk

#### 1. The *Terry* Pat-down Was Justified

Defendant does not object to the constitutionality of the stop of his vehicle but only objects to the search of his person which revealed guns and narcotics. During a constitutional stop, an officer may pat-down or frisk a suspect for weapons if a reasonable officer under the circumstances would be justified in believing the suspect is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *United States v. Campbell*, 486 F.3d 949, 954-55 (6th Cir. 2007); *United States v. Foster*, 376 F.3d 577, 586 n.7 (6th Cir. 2004). "Because the search is for the limited purpose of ensuring the safety of the officer and others around him, the search must 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *Campbell*, 486 F.3d at 955 (quoting *Terry*, 392 U.S. at 29). In determining whether the frisk was constitutional, the court must consider the totality of the circumstances. *See United States v. Bell*, 762 F.2d 495, 499 (6th Cir. 1985) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

9

With the facts and circumstances Officer Roncska had before him at the time of the search, it was reasonable for him to believe that defendant was armed and dangerous. Officer Roncska testified that he recognized defendant at the beginning of the traffic stop. Officer Roncska stated that he was familiar with the defendant from their previous interaction at defendant's home and based on the information regarding defendant provided by Joyce. Joyce told Officer Roncska that she traded property for crack to a man named Pete and she gave a detailed description of where Pete lived and how he looked. She stated that he carried a pistol and lived with his wife. Joyce showed obvious fear of Pete by stating that if the officers told Pete that she had sent them, Pete would kill her. Officer Roncska and Officer Jinnett followed Joyce's directions to the home she described and inside they found a man that matched Joyce's description of Pete. The man told Officer Roncska that his name was Ernest. Officer Roncksa further testified that, during the traffic stop, when he helped defendant out of the car, he noticed a rigid bulge in the groin area defendant's pants. He kept his eyes on this area as defendant exited the vehicle because he suspected the bulge was a weapon. He then began a pat-down search of defendant's groin area and discovered two loaded guns and narcotics.

Thus, prior to beginning a pat-down search, Officer Roncska had information that defendant carried a gun and that at least one person feared he was dangerous, and he personally noticed a bulge that appeared to be a weapon in defendant's pants. Accordingly, the Court finds that a reasonable officer under the circumstances would be justified in believing defendant was armed and dangerous.

Defendant's objections focus significantly on the discrepancies between Officer Roncska's testimony at the initial hearing and the evidence contained on the late-filed DVD. However, these discrepancies do not change the Court's conclusion. Defendant states,

> [Officer Roncska] swore that a crack-addicted person said Ernest had guns. The DVD shows that the person says that Pete had guns. That same person said the person lived in a trailer. The defendant lives in a house. Although the defendant is confined to a wheel-chair, the same crack-addicted person never mentioned that the person she referred to was in a wheelchair.

[Doc. 39.] Each of these discrepancies are immaterial. The name which Joyce used for defendant is immaterial under these circumstances because Joyce also identified the defendant by accurate descriptions of his appearance and where he lived. The fact that Joyce called defendant's home a trailer is immaterial because she described with particularity the location of the home. Additionally, after reviewing the DVD, the Court notes that at one point, Joyce did refer to defendant's home as a house. Finally, though the DVD does not reveal Joyce indicating that defendant used a wheelchair, she did say that he was crippled.

Rather than the late-filed DVD raising questions about whether the information Officer Roncska had from his prior encounter with the defendant supported the *Terry* pat-down, the late-filed DVD confirms all material facts. That is, the DVD confirms that Joyce accurately identified a man who gave her crack by physical description and residence, that she said that this man carried a pistol, that she feared that this man would kill her for telling the officers about him, and that Officer Roncska met the man described by Joyce at his home on an occasion prior to the traffic stop.

11

Defendant also argues that Joyce is not reliable. Although Joyce admitted that she was addicted to crack and she initially was hesitant to admit that she traded Aaron's property for crack, Officer Roncska confirmed most of the information she gave him regarding the defendant. She described where he lived and what he looked like. Officer Roncska and Officer Jinnett went to the location she described and found a man who fit her description and admitted to buying a plasma televison and computer from a woman named Joyce. Other than the name discrepancy, the officers did not find any of the information provided by Joyce about the defendant to be incorrect. The Court finds that the information Joyce provided to Officer Roncska was reliable and a reasonable officer under those circumstances would be justified in believing that the defendant carried a pistol and legitimately placed Joyce in fear of her safety.

### 2. The Pat-down Did Not Exceed the Scope of a *Terry* Frisk

Officer Roncska's pat-down of the defendant did not exceed the scope of permissible *Terry* frisk. During a *Terry* frisk, the officer is entitled "to conduct a carefully limited search of the outer clothing of [a defendant] in an attempt to discover weapons which might be used to assault him," but he may not "place his hands in [defendant's] pockets or under the outer surface of [defendant's] garments until he ha[s] felt weapons." *Terry*, 392 U.S. at 29-30.

From the Court's independent review of the DVD submitted as Exhibit One to the initial suppression hearing, it appears that Officer Roncska pulled the bottom of the outer layer of defendant's shirt or jacket upward toward him as he felt the clothing for a weapon. As Officer Roncska testified, this appears to be the natural result of Officer Roncska's

12

standing position while defendant is sitting in his wheelchair rather than a search under his clothing. Officer Roncska did not attempt to look up under or reach up under defendant's lifted shirt or jacket, but only felt outside clothing. He then pat-down the outer layer of defendant's pants and only when he felt a weapon did he reach under defendant's clothes to obtain it. Accordingly, this was a properly-limited *Terry* frisk of the outer clothing of the defendant in an attempt to discover weapons.

Finally, though the Court did not find that it was an abuse of discretion to reopen the suppression hearing, the Court notes that all of the information it relied in determining that the search of defendant's person was constitutional was presented either at the initial suppression hearing or through the late-filed DVD. The Court did not rely on the testimony of Officer Roncska and Officer Jinnett at the reopened suppression hearing. Thus, even if it was an abuse of discretion to reopen the suppression hearing and the Court was required to ignore all evidence presented at the reopened hearing, the result here would not be different.

### III. CONCLUSION

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** Magistrate Judge Shirley's Amended Report and Recommendation [Doc. 38], and defendant's Motion to Suppress Evidence [Doc. 13] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE